J-S70041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| PETER CRAWLEY, | : | |
| | : | |
| Appellant | : | No. 2022 EDA 2015 |

Appeal from the Judgment of Sentence August 22, 2014
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s):  CP-51-CR-0007325-2013

BEFORE:  OLSON, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:            **FILED OCTOBER 19, 2016**

Peter Crawley ("Crawley") appeals, *nunc pro tunc*, from the judgment of sentence imposed following his convictions of first-degree murder, conspiracy, firearms not to be carried without a license, and carrying firearms on public streets in Philadelphia.[1]  We affirm.

On November 4, 2012, Lance Wilson ("Wilson") was shot and killed in Philadelphia, as part of an ongoing dispute between the residents of 7th and Jefferson Streets, and the residents of 8th and Diamond Streets.  On the day of the shooting, Crawley asked Laquil Coates ("Coates") to pick him up, along with Jamil Davis ("Davis"), because he heard that "them boys" from 7th and Jefferson Streets were outside.  Coates then picked up a fourth man, known only as "Jack" or "SP" ("Jack"), and parked the car at 9th and Jefferson Streets.  The four men smoked marijuana and talked about a

---

[1] 18 Pa.C.S.A. § 2502(a), 903, 6106(a)(1), 6108.

friend, Peter Hopkins ("Manayunk"), who had been killed several months earlier. Crawley stated that he was going to "get" "whoever [they saw]" from 7th and Jefferson Streets to retaliate for Manayunk's death.

The four men left the vehicle and walked toward a Chinese restaurant, where Wilson and his girlfriend were waiting outside. Crawley, Davis, and Jack were armed with handguns. Crawley and Davis fired their weapons in the direction of Wilson. Crawley fired approximately 7 times, and Davis fired approximately 4 or 5 times.[2] Wilson died as a result of a gunshot wound in his back. As the four men fled the scene in Coates's vehicle, Crawley bragged to the others about shooting Wilson.

Dr. Gary Collins ("Dr. Collins"), the Deputy Chief Medical Examiner for the Philadelphia Medical Examiner's Office, ruled Wilson's death a homicide, stating that he suffered a gunshot wound to his back, which pierced the pulmonary artery and caused extensive internal bleeding.

Following a jury trial, Crawley was convicted of the above-mentioned crimes. The trial court sentenced Crawley to a term of life in prison without the possibility of parole. Crawley filed a timely Notice of Appeal. Crawley's trial counsel failed to file a docketing statement pursuant to Pa.R.A.P. 3517, and this Court dismissed the appeal.

---

[2] Eleven 9-millimeter cartridge casings, three projectiles, and one copper fragment were recovered from the scene. Four of the casings were fired from one gun, and seven were fired from a second gun. A bullet jacket from a third weapon was also recovered.

- 2 -

The trial court subsequently appointed Crawley new appellate counsel, who filed a second Notice of Appeal. The appeal was dismissed as untimely filed.

Crawley, unopposed by the Commonwealth, filed a PCRA Petition, asking the PCRA court to reinstate his appellate rights. The PCRA court reinstated Crawley's appellate rights, *nunc pro tunc*, on June 25, 2015. Crawley filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal.

On appeal, Crawley raises the following issues for our review:

1. [Whether] the evidence was insufficient to support the verdict of first[-]degree murder for the following reasons:

> A. Voluntary intoxication sufficient to negate specific intent, where all the evidence supports the contention that the co-conspirators committed this crime after smoking three "dutches" containing marijuana. The marijuana, combined with [Crawley's] overwhelming grief at the death of [Manayunk] and state of fear caused by the ongoing tensions, overcame him to the point of causing him to lose control of his faculties and sensibilities[?]

> B. Lack of specific intent, where the evidence establishes conclusively that this shooting was an outburst of retaliative feeling, meant primarily to express anger and grief arising from a prior murder, and that the shooters did not intend to kill any particular person[?]

> C. Heat of passion, where the killing of a friend and ongoing tensions and violence, requiring him to be hyper-vigilant at all times for fear that his life might be taken, brought about a combination of rage, resentment, and terror such that any young man in his position would become impassioned to the extent

- 3 -

that his mind was rendered incapable of cool reflection[?]

D. Lack of reliable evidence, where all of the evidence that [Crawley] fired a gun came from witnesses who were involved in the underlying event and had strong incentives to shift blame and to seek favorable treatment in this and other unrelated criminal matters, and where it is just as likely as not that [] Davis [] and [Jack], [] the brother of [Manayunk,] [] accomplished the shooting without [Crawley's] involvement[?]

Put simply, even when viewed in the light most favorable to the Commonwealth, was this not a case of, at worst, third[-]degree murder[,] and[,] thus[,] should not the jury verdict of first[-]degree murder, and the [O]rder of sentence imposed therefrom, be reversed?

2. [Whether] the weight of the evidence is against the verdict, given the polluted and corrupt nature of the testimony that was the sole evidentiary link between [Crawley] and the shooting, as argued *supra*?

3. [Whether] the trial court erred in denying [Crawley's] [Motions] for a redaction and mistrial []?

Brief for Appellant at 4-5 (issues renumbered).

In his first claim, Crawley argues that there was insufficient evidence to support his first-degree murder conviction, and offers four separate sub-issues for our consideration. **See id.** at 11, 15-16, 17-18.

The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our prior judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts

- 4 -

regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced[,] is free to believe all, part or none of the evidence.

***Commonwealth v. Talbert***, 129 A.3d 536, 542-43 (Pa. Super. 2015) (citation omitted).

We will address Crawley's first and second sub-issues together, as both challenge the element of specific intent required to establish first-degree murder. In his first sub-issue, Crawley argues that he lacked the specific intent to commit first-degree murder because he was "thunderously inebriated at the time of the shooting," after smoking three "dutches" of marijuana. Brief for Appellant at 11, 13. Crawley asserts that, despite the trial court's instruction on specific intent, the jury failed to take into account all of the evidence regarding his state of mind. ***Id.*** at 13. In his second sub-issue, Crawley contends that there was insufficient evidence to prove that he had formed the specific intent to commit first-degree murder because the shooting was an "outburst of retaliative feeling," and he "did not intend to kill any particular person." ***Id.*** at 11, 15. Crawley likens his actions to the firing of a "warning shot" in a reckless or grossly negligent

manner, and argues that, therefore, the shooting should be considered involuntary manslaughter rather than first-degree murder. *Id.* at 14-15.

In order for a jury to find a defendant guilty of first-degree murder, "the Commonwealth must prove, beyond a reasonable doubt, that a human being was unlawfully killed, that the accused was responsible for the killing, and that the accused acted with a specific intent." **Commonwealth v. Pagan**, 950 A.2d 270, 279 (Pa. 2008); **see also** 18 Pa.C.S.A. § 2502(a).[3] "A specific intent to kill may be proved by wholly circumstantial evidence and may be inferred by the defendant's use of a weapon on a vital part of the victim's body." **Commonwealth v. Miller**, 897 A.2d 1281, 1285 (Pa. Super. 2006).

> A deadly weapon is defined as "[a]ny firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other devise or instrumentality which, in the manner in which it is used or is intended to be used, is calculated or likely to produce death or serious bodily injury."

**Pagan**, 950 A.2d at 279 (internal citations omitted); **see also** 18 Pa.C.S.A. § 2301.

Crawley's first argument raises a voluntary intoxication defense.[4]

---

[3] Conspicuously absent from the statutory definition of first-degree murder is the requirement that a defendant intended to kill a *particular* person. **See** 18 Pa.C.S.A. § 2502.

[4] Although Crawley did not specifically raise an intoxication defense at trial, there was evidence presented at trial that Crawley smoked marijuana on the day of the shooting. **See** N.T., 8/19/14, at 110-11.

> To establish a diminished capacity defense, a defendant must prove that his cognitive abilities of deliberation and premeditation were so compromised, by mental defect or voluntary intoxication, that he was unable to formulate the specific intent to kill. The mere fact of intoxication does not give rise to a diminished capacity defense. Rather, a defendant must show that he was overwhelmed to the point of losing his faculties and sensibilities to prove a voluntary intoxication defense. Evidence that the defendant lacked the ability to control his or her actions or acted impulsively is irrelevant to specific intent to kill….

*Commonwealth v. Spotz*, 47 A.3d 63, 90-91 (Pa. Super. 2012) (citation omitted). A voluntary intoxication defense may only be offered to reduce murder from a higher degree to a lower degree. *See* 18 Pa.C.S.A. § 308.

Crawley makes no attempt to show that he was so intoxicated that "he was overwhelmed to the point of losing his faculties and sensibilities." *Spotz*, 47 A.3d at 91. Additionally, there is no evidence in the record to suggest that Crawley was intoxicated to such an extent. On the day of the shooting, Crawley and the other men shared three "dutches" of marijuana. *See* N.T., 8/19/14, at 110-11. The trial court found that "there was no evidence of the amount of marijuana contained in each of the [dutches], the period of time over which the dutches were consumed by [Crawley,] or what portion of the dutches [Crawley] smoked relative to the other males." Trial Court Opinion, 9/18/15, at 9. Crawley does nothing more than present the fact of intoxication as evidence that he lacked the specific intent to commit first-degree murder. However, "the mere fact of intoxication" is not sufficient to support a diminished capacity defense. *See Spotz*, 47 A.3d at

91; *see also Commonwealth v. Carpenter*, 617 A.2d 1263, 1265 (Pa. 1992) (concluding that trial counsel was not ineffective for failing to raise a voluntary intoxication defense where there was no evidence to show that the appellant was so intoxicated that he was incapable of forming a specific intent to kill). Accordingly, Crawley has not met his burden in proving that he was so intoxicated at the time of the crime that he lost control of his faculties and sensibilities.

Here, the evidence presented at trial shows that on the day of the shooting, Crawley called Coates and asked him to pick him up because "them boys" from 7th and Jefferson Streets were outside. *See* N.T., 8/19/14, at 70-72. Coates testified that Crawley and Davis got into the car, and drove toward City Hall to pick up Jack. *See id.* at 73-74. Both Coates and Davis testified that the four men started smoking marijuana and talking about Manayunk, who was allegedly killed by a resident of 7th and Jefferson Streets. *See id.* at 74-75; *see also* N.T., 8/20/14, at 28. Coates testified that Crawley told the others that he was "going to do what they did to Manayunk" to "whoever [they saw] down on 7th Street." N.T., 8/20/14, at 27-28.

Coates testified that Crawley, Davis and Jack got out of the car and began walking towards a Chinese restaurant, where Wilson and his girlfriend were waiting outside. *See* N.T., 8/19/14, at 76-77. Coates also stated that Crawley and Davis were the two shooters; he saw them fire toward Wilson;

and he heard approximately nine to eleven shots. *See id.* at 77-78. Davis testified that he and Crawley were shooting, and that he was unable to discern whether Jack was shooting. *See* N.T., 8/20/14, at 29-31. Both Coates and Davis testified that when they drove back to 8th and Diamond Streets, Crawley was bragging about shooting Wilson. *See id.* at 31-32; *see also* N.T., 8/19/14, at 80.

Dr. Collins testified that Wilson's death was a homicide, caused by a gunshot wound to his back. *See* N.T., 8/19/14, at 120. Dr. Collins stated that the bullet entered Wilson's back just below the scapula and traveled toward the front of the chest cavity. *See id.* at 120-21. Dr. Collins also testified that the bullet pierced the pulmonary artery, which resulted in extensive internal bleeding. *See id.* at 121.

We conclude that the evidence of record, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to establish that Crawley was one of the shooters. *See Commonwealth v. Ragan*, 645 A.2d 811, 818 (Pa. 1994) (holding that there was sufficient evidence to sustain a conviction for first-degree murder where the Commonwealth presented eyewitness testimony identifying the killer). Crawley's comments to the others before and after the shooting evidenced his intent to kill Wilson, or anyone else who might be on the street at 7th and Jefferson. *See Commonwealth v. Cook*, 676 A.2d 639, 644 (Pa. 1996) (finding sufficient evidence to sustain a conviction of first-degree murder

where "inculpatory statements appellant made to numerous parties demonstrated that appellant deliberately planned to murder the victim"). Further, we conclude that the evidence, viewed in the light most favorable to the Commonwealth, clearly supports a finding of specific intent, based upon Crawley's use of a deadly weapon to inflict injury on a vital part of Wilson's body. Thus, Crawley cannot succeed on his claim that there was insufficient evidence to sustain his conviction for first-degree murder.

In his third sub-issue, Crawley argues that his crime should be characterized as voluntary manslaughter resulting from the heat of passion, rather than as first-degree murder. Brief for Appellant at 17-18. Crawley asserts that, due to the ongoing tensions between the residents of the two neighborhoods, and the death of one of his friends, he was in a state of rage, resentment, and terror that caused him to "snap." **Id.** at 18-19.

"'Heat of passion' includes emotions such as anger, rage, resentment or terror, which renders the mind incapable of reason." **Commonwealth v. Mason**, 741 A.2d 708, 714 (Pa. 1999) (citation omitted).

> An objective standard is applied to determine whether the provocation was sufficient to support the defense of "heat of passion" voluntary manslaughter. The ultimate test for adequate provocation remains whether a reasonable man, confronted with this series of events, became impassioned to the extent that his mind was incapable of cool reflection.

**Commonwealth v. Miller**, 987 A.2d 638, 650 (Pa. 2009) (internal citations and quotation marks omitted). "Absent evidence of negligence or accident, a 'heat of passion' voluntary manslaughter charge is improper where the

victim is not the person who provoked the defendant." *Commonwealth v. Ragan*, 743 A.2d 390, 397 (Pa. 1999) (citations omitted).

Crawley argues that he was "provoked" by the recent death of Manayunk, and a fear that he might also be targeted. Neither of these "provocations" is sufficient to mitigate his conviction to "heat of passion" voluntary manslaughter. Manayunk was killed about six months prior to the murder of Wilson. *See* N.T., 8/20/14, at 24; *see also* N.T., 8/19/14, at 72. Six months is more than a sufficient amount of time to engage in cool reflection. *See Commonwealth v. Busanet*, 54 A.3d 35, 55 (Pa. 2012) (stating that the appellant had sufficient time to engage in cool reflection where the victim's threats toward the appellant were made weeks prior to the shooting). Additionally, there was no evidence presented at trial to suggest that Crawley was in fear of his life. In fact, his stated purpose was to kill anyone he might happen to see on 7th Street, in retaliation for Manayunk's death. *See* N.T., 8/20/14, at 27-28; *see also* Trial Court Opinion, 9/18/15, at 12 (wherein the trial court noted that "[Crawley] was the aggressor who set [out] on a mission to indiscriminately kill anyone who happened to be on the street at 7th and Jefferson when he and others, armed with handguns, arrived at that location and opened fire, effectively ambushing [Wilson] and taking his life."). Finally, as noted above, we conclude that there is sufficient evidence to sustain Crawley's first-degree murder conviction. Accordingly, this claim is without merit.

In his fourth sub-issue, Crawley claims that there was insufficient evidence to prove that he was the shooter because the evidence presented at trial was unreliable. Brief for Appellant at 15. Crawley argues that the evidence is from "corrupt and polluted sources," because the witnesses were all involved in the underlying event, and, therefore, had a motive to blame Crawley. *Id.* at 15-16. Additionally, Crawley claims that Davis and Coates had a motive to testify for the Commonwealth at trial in order to advance their interests in their own open cases, and, therefore, their testimony is unreliable. *Id.* at 16-17. Crawley argues that, "[w]ithout the testimony of Coates and Davis, there is no tie between [Crawley] and this shooting." *Id.* at 17. Crawley also asserts that, based on the evidence presented at trial, it is just as likely that Davis fired the fatal shot. *Id.* at 16-17.

Crawley's claims challenge the weight, rather than the sufficiency, of the evidence.[5] *See Commonwealth v. Melvin*, 103 A.3d 1, 43 (Pa. Super. 2014) (stating that "[a]n argument regarding the credibility of a witness's testimony goes to the weight of the evidence, not the sufficiency of the evidence.") (citation and quotation marks omitted); *see also Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004) (stating that "[q]uestions concerning … improper motive go to the credibility of the

_____

[5] In his second claim, Crawley asserts that the verdict is against the weight of the evidence, due to the "corrupt and polluted nature of the testimony." Brief for Appellant at 24-25. Crawley claims that the witnesses testified against him at trial to further their own interests, and therefore, their testimony is unreliable. *Id.* at 26. Because these claims are similar, we will address them together.

- 12 -

witnesses."). A challenge to the weight of the evidence must be raised with the trial judge before sentencing, or in a post-sentence motion. *See* Pa.R.Crim.P. 607.

Here, Crawley did not raise a challenge to the weight of the evidence with the trial court before sentencing, and he did not file a post-sentence motion. Therefore, his weight of the evidence claim is waived.[6] *See* *Commonwealth v. Sherwood*, 982 A.2d 483, 495 (Pa. 2009) (holding that the appellant waived his weight of the evidence claim by not raising it before the trial court).

Further, to the extent that Crawley argues that there was insufficient evidence to prove that he was one of the shooters, his claim is without merit. As noted above, there was sufficient evidence to prove that Crawley was one of the shooters. Moreover, because the jury convicted Crawley of both first-degree murder and conspiracy, the jury was not specifically required to find that Crawley fired the fatal shot; in fact, the jury was not required to find that Crawley was one of the shooters. *See*

---

[6] "The jury, as the finder of fact, had the duty to determine the credibility of the testimony and evidence presented at trial." *Talbert*, 129 A.2d at 546; *see also DeJesus*, 860 A.2d at 107 (stating that "[t]his Court cannot substitute its judgment for that of the jury on issues of credibility."). Further, during its general instructions, the trial court told the jury that they could consider a witness's potential bias or personal interests in making a credibility determination. *See* N.T., 8/20/14, at 147-48. Additionally, during trial, the jury was made aware that Davis had entered into a Memorandum of Agreement for his participation in the crime, and the contents of the Agreement were fully explained to the jury. *See id.* at 37-41. The trial court also instructed the jury that they were free to believe all, some or none of the testimony of any witness. *See id.* at 147.

*Commonwealth v. Montalvo*, 956 A.2d 926, 932 (Pa. 2008) (stating that "each member of a conspiracy to commit homicide can be convicted of first-degree murder regardless of who inflicted the fatal wound.").

In his third claim, Crawley avers that the trial court erred in denying his Motion for redaction regarding a portion of a statement he made to police, which included a reference to his pretrial incarceration.[7]  Brief for Appellant at 19-20.  Crawley also asserts that the trial court erred in denying his subsequent Motion for mistrial.  *Id.* at 19-20.  Crawley challenges the following portion of his statement:

> [Police Officer]: When was the last time you saw or talked to [Coates]?
>
> [Crawley]: When we was locked up together at CFCF.
>
> [Police Officer]: When were you locked up?
>
> [Crawley]: I got locked up on January 17, 2013, from the PO office.[8]

N.T., 8/20/14, at 20 (footnote added); *see also id.* at 97.  Crawley claims that this portion of his statement has no probative value, and had a

---

[7] Crawley made the statement to police after he received *Miranda* warnings.  *See Miranda v. Arizona*, 384 U.S. 436 (1966); *see also* Trial Court Opinion, 9/18/15, at 6, 12-13; N.T., 8/20/14, at 89.

[8] "CFCF" refers to the Curran-Fromhold Correctional Facility.  "PO" is a reference to a parole officer.  Before the Commonwealth introduced the statement at trial, Crawley's trial counsel asked the trial court to redact the references to his prior bad acts.  *See* N.T., 8/20/14, at 14-18.  The trial court denied Crawley's Motion to redact.  *See id.* at 20.  Crawley's trial counsel then moved for mistrial, and the trial court denied the Motion.  *See id.* at 21.

prejudicial effect because it referred to prior bad acts and his pretrial incarceration. Brief for Appellant at 20, 22. Further, Crawley argues that the statement should have been redacted to exclude references to pretrial incarceration, and that the trial court failed to engage in proper balancing under Pa.R.E. 404(b)(2). *Id.* at 21-22.

> [T]he decision of whether to grant a mistrial is within the sound discretion of the trial court, and will not be reversed on appeal absent an abuse of that discretion. The remedy of a mistrial is an extreme one that is required only when an incident is of such a nature that its unavoidable effect is to deprive the defendant of a fair and impartial trial by preventing the jury from weighing and rendering a true verdict.

*Commonwealth v. Begley*, 780 A.2d 605, 624 (Pa. 2001) (citations omitted). Further, "[m]ere passing references to criminal activity will not require reversal unless the record indicates that prejudice resulted from the reference." *Commonwealth v. Stafford*, 749 A.2d 489, 496 (Pa. Super. 2000) (citation omitted).

Here, the challenged portion of Crawley's statement includes a brief reference to being "locked up," and a brief reference to being in contact with a parole officer. *See* N.T., 8/20/14, at 20, 97. There was no further explanation about CFCF, or any specific crimes committed by Crawley. It is not clear that the statement refers to incarceration for a prior crime rather than Crawley's pretrial incarceration for the shooting at issue. *See Commonwealth v. Johnson*, 838 A.2d 663, 680 (Pa. 2003) (stating that "there is no rule in Pennsylvania which prohibits reference to a defendant's

- 15 -

incarceration awaiting trial or arrest for the crimes charged."). Even if the references were made in regard to incarceration for a prior crime, there is nothing in the record to suggest that such fleeting statements prejudiced Crawley. *See Commonwealth v. Johnson*, 666 A.2d 690, 695 (Pa. Super. 1995) (concluding that a witness's statement that he knew the defendant "just got out of jail" was not so prejudicial as to require a mistrial, because it was a passing remark, and it was not intentionally elicited by the Commonwealth). Moreover, given the overwhelming evidence of Crawley's guilt presented at trial, any potential prejudice the references may have caused was harmless. *See Stafford*, 749 A.2d at 496-97 (stating that "[h]armless error is present when the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict.") (citation and quotation marks omitted). Thus, Crawley's final claim is without merit.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/2016